**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISON**

| | |
|---|---|
| reFX AUDIO SOFTWARE, INC.,       ) | |
|       ) | |
|    *Plaintiff,*         ) | |
|       ) | |
| v.         ) | Case No. 1:13-cv-00937 |
|       ) | |
| DOROTHY GREEN, LAURA SHIRLEY,   ) | Hon. Thomas M. Durkin |
| MARIA REYES, CHRISTOPHER SCALET,  ) | |
| PETER PETROU, CHRISTIAN CRUZ,    ) | ***JURY TRIAL DEMANDED*** |

reFX AUDIO SOFTWARE, INC.,         )
                                       )
    *Plaintiff,*                    )
                                       )

v.                                      )    Case No. 1:13-cv-00937

DOROTHY GREEN, LAURA SHIRLEY,
MARIA REYES, CHRISTOPHER SCALET,
PETER PETROU, CHRISTIAN CRUZ,
RAQUEL QUIROZ, VICTORIA BANIS,
THOMAS PAVLOPOULOS, LAMONT COLEMAN,
ANTHONY GROSS, PAULA YOUNGBLOOD,
ANASTAS DHORI, TERRY BUTTS,
KESTAS PALULONIS, DOE 67,
RYSZARD ZBROINSKI, DOE 75,
JERMALE YOUNGER, MIKE SIEGEL,
MARY LYNNE SHAFER, OMAR MARTINEZ,
BRIAN McCLAIN, ALEX NEGATKIN,
ROBERT WALKER, DAINIUS KUGAUDA,
ANDREW GUICE, EDWARD LOVE,
SCOTT LEE ROESSLEIN, LAURA SANCHEZ,
WENDY ENGER, MILADIN BULATOVIC,
ZOFIA LUKASZCZYK, ROBIN THOMPSON,
KAREN COAN, SCOTT MAKI,
YVONNE WASHINGTON, ANDREW CWICK,
JOSE ENRIQUE GARCIA, AND STEVE DIMAKOS,

    *Defendants.*

Hon. Thomas M. Durkin

***JURY TRIAL DEMANDED***

---

**FIRST AMENDED COMPLAINT**

Plaintiff reFX Audio Software, Inc. ("reFX Audio") brings this action against the above-captioned Defendants (collectively "Defendants") alleging copyright infringement and

1

contributory copyright infringement, and seeking damages and injunctive relief. reFX Audio alleges as follows:

## JURISDICTION AND VENUE

1.      This is a suit for copyright infringement and contributory copyright infringement under the United States Copyright Act of 1976, as amended, 17 U.S.C. §§ 101 et seq. (the "Copyright Act"). This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

2.      Venue in this District is proper pursuant to 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1391 (b) and 28 U.S.C. § 1400(a). Plaintiff has used geolocation technology and information provided by each Defendant's Internet Service Provider to determine that, upon information and belief, each Defendant may be found in this State and in this District.

3.      In addition, this Court has personal jurisdiction over Defendants because, upon information and belief, all Defendants reside within this State and in this District. All of the Defendants conspired to and did commit acts of copyright infringement and contributory copyright infringement statewide and nationwide, including in this State and in this District. Defendants, therefore, should anticipate being haled into court in this State and in this District.

## JOINDER

4.      Defendants acted in a collective and interdependent manner via the Internet in the unlawful reproduction and distribution of Plaintiff's ROM synthesizer-plugin software program by means of interactive "peer–to–peer" ("P2P") file transfer technology protocol called BitTorrent.

5.    Defendants acted in a collective and interdependent manner via BitTorrent to unlawfully reproduce and distribute Plaintiff's software including but not limited to Nexus 2.2.0 and Nexus 2.2.1 (referred to as "Nexus Software" or "Software").

6.    This case involves one "swarm," a group of users, or "peers," which used the BitTorrent protocol to engage in mass copyright infringement of Nexus Software by illegally uploading it within this swarm. Defendants illegally uploaded and shared Plaintiff's copyrighted software within this swarm.

7.    Plaintiff has retained an Internet investigator who, through the use of proprietary monitoring technology, can and has obtained evidence of the Defendants' IP addresses uploading the Software. Exhibit A and Group Exhibit F attached show instances of Defendants uploading the Software.

8.    Plaintiff's investigator has downloaded pieces of the Software from the Defendants on multiple occasions. Group Exhibit F.

9.    P2P networks, at least in their most common form, are computer systems that enable Internet users to: 1) make files (including software) stored on each user's computer available for copying by other users or peers; 2) search for files stored on other users' computers; and 3) transfer exact copies of files from one computer to another via the Internet. The particular P2P protocol at issue in this suit is called "BitTorrent."

10.    For example, user Christopher Scalet of Illinois initiated his infringing conduct by first intentionally logging into the one of many BitTorrent client repositories known for their large index of copyrighted movies, television shows and software. Christopher Scalet then intentionally obtained a torrent file (the "Swarm Sharing Hash File" at issue in this suit,

3

1DCAAFEA49753AF5A83ACBFD9022762138E5CDBD ("Hash 1DCA")) for Plaintiff's Software from the index and intentionally loaded that torrent file into a computer program designed to read such files.

     11.    With the torrent file intentionally loaded by Defendant Christopher Scalet, his BitTorrent program used the BitTorrent protocol to initiate simultaneous connections with hundreds of other users possessing and "sharing" copies of the digital media described in Hash 1DCA, namely, Plaintiff's Nexus Software, including with, upon information and belief, other identified Defendants and other peers. The program coordinated the copying of Plaintiff's Software to Christopher Scalet's computer from the other users, or peers, sharing the Software. As each piece of the Software was copied to Christopher Scalet's computer, the downloaded pieces of Plaintiff's Software were immediately made available to all other peers.

     12.    Each of the Defendants performed the same acts as those described for Christopher Scalet in Paragraphs 10 and 11. Each of these Defendants also immediately became an uploader, meaning that each Defendant's downloaded pieces were immediately available to other users seeking to obtain the file, without degradation in the Software's quality or functionality. It is in this way that each Defendant simultaneously copied and distributed the Software. Thus, each participant in the BitTorrent swarm was an uploader (distributor) and a downloader (copier) of the illegally transferred file. Here, upon information and belief many members of the swarm at issue, including Defendants, downloaded and uploaded portions of Plaintiff's Software to each other.

     13.    This interactive, simultaneous data-sharing connection is often referred to as a "swarm" and leads to a rapid viral spreading of a file throughout peer users. As more peers join

the swarm, the likelihood of a successful download increases. Because of the nature of the BitTorrent protocol, any user that has downloaded a piece prior to the time a subsequent user downloads the same file is automatically a source for the subsequent peer so long as that prior user is online at the time the subsequent user downloads a file. Thus, after a successful download of a piece, the piece is made available to all other users.

14.     Thus, a Defendant's distribution of even a single unlawful copy of the Software can result in the nearly instantaneous worldwide distribution of that single copy to an unlimited number of people. In this case, each Defendant's copyright infringement built upon the prior infringements, in a cascade of infringement.

15.     Essentially, because of the nature of the swarm uploads and downloads as described above, every Defendant, in concert with other Defendants and swarm members, is simultaneously allowing others to steal (download from the swarm) Plaintiff's copyrighted materials in numerous jurisdictions around the country, including this jurisdiction. This illegal simultaneous data-sharing swarm is performed because each Defendant acts in an interactive manner with other Defendants and peers, including with, upon information and belief, other identified Defendants, allowing other users to illegally download the unlawfully obtained copyrighted materials at issue in this action. Thus, there is a significant amount of infringement in this District, and a significant transmission of infringing materials to and from this District.

16.     In addition, because a BitTorrent swarm is a collective enterprise where each downloader is also an uploader, the group of uploaders collaborates to speed the completion of each download of the file.

17.    Upon information and belief, many Defendants also acted in concert with other swarm members and Defendants by participating in "Peer Exchange." Peer Exchange is a communications protocol built into almost every BitTorrent protocol which allows swarm members to share files more quickly and efficiently. Peer Exchange is responsible for helping swarm members find more users that share the same data. Thus, each swarm member is helping all other swarm members participate in illegal file sharing, regardless of geographical boundaries.

18.    Upon information and belief, many Defendants also acted in concert with other Defendants by linking together globally through use of a Distributed Hash Table. A Distributed Hash Table is a sort of world-wide telephone book, which uses each file's "info-hash" (a unique identifier for each torrent file) to locate sources for the requested data. Thus, swarm members are able to access a partial list of swarm members rather than being filtered through a central computer called a tracker. By allowing members of the swarm to rely on individual computers for information, this not only reduces the load on the central tracker, but also means that every client that is sharing this data is also helping to hold this worldwide network together.

19.    The torrent swarm in this case is not an actual entity, but is rather made up of numerous individuals, acting in concert with each other, to achieve the common goal of infringing upon the Plaintiff's copyright.

## PARTIES

20.    Plaintiff is a Canadian corporation located at 6360 202nd Street, Unit 101, Langley British Columbia, V2Y 1N2, that produces, markets and sells sound mixing software.

6

21.     Defendant, Dorothy Green, formerly known as Doe 5 is, upon information and belief, an individual residing at 10222 South Trumbull Avenue, Evergreen Park, Illinois, 60805.

22.     Defendant, Laura Shirley, formerly known as Doe 10 is, upon information and belief, an individual residing at 1620 Warwick Lane, Schaumburg, Illinois, 60193.

23.     Defendant, Maria Reyes, formerly known as Doe 13 is, upon information and belief, an individual residing at 616 Coneflower Drive, Romeoville, Illinois, 60446.

24.     Defendant, Christopher Scalet, formerly known as Doe 15 is, upon information and belief, an individual residing at 295 Frederick Court, Hoffman Estates, Illinois, 60169.

25.     Defendant, Peter Petrou, formerly known as Doe 22 is, upon information and belief, an individual residing at 16239 South Dan O'Connell Drive, Plainfield, Illinois, 60586.

26.     Defendant, Christian Cruz, formerly known as Doe 26 is, upon information and belief, an individual residing at 5111 South Austin Avenue, Chicago, Illinois, 60638.

27.     Defendant, Raquel Quiroz, formerly known as Doe 27 is, upon information and belief, an individual residing at 1708 Richfield Trail, Romeoville, Illinois, 60446.

28.     Defendant, Victoria Banis, formerly known as Doe 29 is, upon information and belief, an individual residing at 343 Bridgewood Drive, Antioch, Illinois, 60002.

29.     Defendant, Thomas Pavlopoulos, formerly known as Doe 37 is, upon information and belief, an individual residing at 542 Keepataw Drive, Lemont, Illinois, 60439.

30.     Defendant, Lamont Coleman, formerly known as Doe 45 is, upon information and belief, an individual residing at 520 North Longwood Drive, Glenwood, Illinois, 60425.

31.     Defendant, Anthony Gross, formerly known as Doe 49 is, upon information and belief, an individual residing at 1750 Chancey Court, Belvidere, Illinois, 61008.

32.    Defendant, Paula Youngblood, formerly known as Doe 51 is, upon information and belief, an individual residing at 7918 Chelsea Drive, Apartment #205, Woodridge, Illinois, 60517.

33.    Defendant, Anastas Dhori, formerly known as Doe 55 is, upon information and belief, an individual residing at 398 East 17th Street, Lombard, Illinois, 60148.

34.    Defendant, Terry Butts, formerly known as Doe 56 is, upon information and belief, an individual residing at 2760 West 84th Place, Chicago, Illinois, 60652.

35.    Defendant, Kestas Palulonis, formerly known as Doe 65 is, upon information and belief, an individual residing at 5412 Gerry Lane, Crystal Lake, Illinois, 60014.

36.    Defendant Doe 67 filed a motion to quash [Docket No. 13]. Accordingly, Doe 67 remains unidentified at this time.

37.    Defendant, Ryszard Zbroinski, formerly known as Doe 71 is, upon information and belief, an individual residing at 9445 Greenwood Drive, Des Plaines, Illinois, 60016.

38.    Defendant Doe 75 filed a motion to quash [Docket No. 14]. Accordingly, Doe 75 remains unidentified at this time.

39.    Defendant, Jermale Younger, formerly known as Doe 80 is, upon information and belief, an individual residing at 722 Walnut Street, Apartment #1E, Waukegan, Illinois, 60085.

40.    Defendant, Mike Siegel, formerly known as Doe 84 is, upon information and belief, an individual residing at 2918 West Farragut Avenue, Chicago, Illinois, 60625.

41.    Defendant, Mary Lynne Shafer, formerly known as Doe 85 is, upon information and belief, an individual residing at 4314 Lawn Avenue, Western Springs, Illinois, 60558.

42.     Defendant, Omar Martinez, formerly known as Doe 93 is, upon information and belief, an individual residing at 2022 West Algonquin Road, Apartment #3B, Mount Prospect, Illinois, 60056.

43.     Defendant, Brian McClain, formerly known as Doe 99 is, upon information and belief, an individual residing at 4100 Stonebridge Drive, Zion, Illinois, 60099.

44.     Defendant, Alex Negatkin, formerly known as Doe 101 is, upon information and belief, an individual residing at 9 Oak Creek Drive, Apartment 1906, Buffalo Grove, Illinois, 60089.

45.     Defendant, Robert Walker, formerly known as Doe 108 is, upon information and belief, an individual residing at 10506 South Avenue B, Chicago, Illinois, 60617.

46.     Defendant, Dainius Kugauda, formerly known as Doe 109 is, upon information and belief, an individual residing at 1811 Lobelia Lane, Plainfield, Illinois, 60586.

47.     Defendant, Andrew Guice, formerly known as Doe 111 is, upon information and belief, an individual residing at 120 Devoe Drive, Oswego, Illinois, 60543.

48.     Defendant, Edward Love, formerly known as Doe 113 is, upon information and belief, an individual residing at 5356 West Bloomingdale Avenue #2, Chicago, Illinois, 60639.

49.     Defendant, Scott Lee Roesslein, formerly known as Doe 114 is, upon information and belief, an individual residing at 640 Ash Street, Algonquin, Illinois, 60102.

50.     Defendant, Laura Sanchez, formerly known as Doe 128 is, upon information and belief, an individual residing at 733 Town Road, West Chicago, Illinois, 60185.

51.     Defendant, Wendy Enger, formerly known as Doe 132 is, upon information and belief, an individual residing at 9221 Natchez Avenue, Morton Grove, Illinois, 60053.

9

52.     Defendant, Miladin Bulatovic, formerly known as Doe 134 is, upon information and belief, an individual residing at 7505 West Winona Street, Harwood Heights, Illinois, 60706.

53.     Defendant, Zofia Lukaszczyk, formerly known as Doe 135 is, upon information and belief, an individual residing at 22598 Aster Court, Frankfort, Illinois, 60423.

54.     Defendant, Robin Thompson, formerly known as Doe 140 is, upon information and belief, an individual residing at 3550 193rd Street, Lansing, Illinois, 60438.

55.     Defendant, Karen Coan, formerly known as Doe 146 is, upon information and belief, an individual residing at 38 Ardmore Avenue, Glenview, Illinois, 60025.

56.     Defendant, Scott Maki, formerly known as Doe 158 is, upon information and belief, an individual residing at 1811 Pebble Beach Drive, Plainfield, Illinois, 60586.

57.     Defendant, Yvonne Washington, formerly known as Doe 163 is, upon information and belief, an individual residing at 7230 Lyons Street, Morton Grove, Illinois, 60053.

58.     Defendant, Andrew Cwick, formerly known as Doe 167 is, upon information and belief, an individual residing at 1622 West Le Moyne Street, Apartment #2, Chicago, Illinois, 60622.

59.     Defendant, Jose Enrique Garcia, formerly known as Doe173 is, upon information and belief, an individual residing at 10423 South Avenue H, Apartment #1, Chicago, Illinois, 60617.

60.     Defendant, Steve Dimakos, formerly known as Doe 175 is, upon information and belief, an individual residing at 215 Crabtree Lane, Glenview, Illinois, 60025.

61.     Defendants are BitTorrent users who, through their computers, collectively interconnected with a swarm for the sharing of unique files. The particular file a BitTorrent swarm is associated with has a unique "hash" (a file identifier generated by an algorithm developed and implemented by the National Security Agency).

62.     This hash file provides access to an unauthorized copy of Plaintiff's copyrighted Software.

63.     Defendants' infringements allow them and others to unlawfully obtain and distribute unauthorized copies of Plaintiff's Software for which Plaintiff spent a substantial amount of time, money and effort to produce, market and distribute. The Software is currently offered for sale on its website, http://refx.com.

64.     Each time a Defendant unlawfully distributes a free copy of Plaintiff's copyrighted Software to others over the Internet, particularly via BitTorrent, each recipient can then distribute that unlawful copy to others without degradation in the Software's quality or functionality. Thus, a Defendant's distribution of even one unlawful copy can result in the nearly instantaneous worldwide distribution to a limitless number of people. Plaintiff now seeks redress for this rampant infringement of its exclusive rights in its Software.

65.     Defendants initially became known to Plaintiff by the Internet Protocol ("IP") address assigned to each Defendant by his or her Internet Service Provider ("ISP") on the date and at the time at which the infringing activity of was observed. In addition, and as provided in Exhibit A and Group Exhibit F, Plaintiff has learned the torrent file copied and distributed by each Defendant – Hash 1DCA, the BitTorrent client application utilized by each Defendant, and

the location of each Defendant at the time of download – the Northern District of Illinois – as determined by geolocation technology utilized by Plaintiff's investigator.

66.     Pursuant to this Court's Order granting Plaintiff's motion for expedited discovery, Plaintiff served a third-party subpoena on ISPs determined by Plaintiff's investigator.

67.     Before any ISP provided any information to Plaintiff, the ISP sent notice to the then Doe Defendants informing him or her of the subpoena requesting information, and informing him or her of his or her rights to challenge the subpoena. Some Defendants responded to this notice and challenged the subpoena.

68.     Subsequently, the ISPs produced information to Plaintiff identifying the Doe Defendants who did not challenge the subpoena as described above in Paragraphs 21-60.

69.     Plaintiff has attempted to contact each Defendant multiple times.

70.     Included in Plaintiff's correspondence to the Defendants was a document entitled "Frequently Asked Questions." This document addresses the issue if the account holder believes he or she might not be the person who downloaded or otherwise infringed the Software. As set forth below, this document informs the recipient that the primary concern is stopping infringement and that Plaintiff will work with any defendant who has been wrongfully identified to determine the identity of the true infringer.

*I know that I personally didn't download this work. What could have happened?*

Your ISP linked your name and address with an IP address that infringed our client's copyrighted work. Regardless of your individual involvement in any download, someone accessed your IP address (and thus your account) and used this resource to download the copyrighted work. Perhaps it was a guest or family member who accessed your IP address for the unlawful download. Our interest is in tracking down the infringer of our client's copyrighted work and to put a stop to this ongoing infringement. We have the tools to work with you to determine who infringed our client's work.

## STATEMENT OF FACTS

### THE COPYRIGHTS

71.    Plaintiff is, and at all relevant times has been, the copyright owner of exclusive rights under United States copyright law with respect to the Software.

72.    The Software is directed to a ROM synthesizer-plugin acting as an electronic musical instrument that plays back samples stored in ROM chips to generate sound, commonly known in the industry as a "Rompler." Because it is plug-in software, this Software can only be used in conjunction with professional music software used by professionals such as artists and producers.

73.    As set forth above, the Software incorporates distinctive copyrighted works, including but not limited to, "Nexus 2," "Nexus 2.2.1," "Nexus Expansion Bass," and "Nexus Expansion Minimal House 2."

74.    By incorporating a "mock" faceplate into the Software (one example shown in Figure 1, below), a user can manipulate music with the movement of his or her mouse across the faceplate. Plaintiff's Software offers more than 1000 distinctive "factory preset" sounds and music for users to manipulate. Users can also elect to add-on to these 1000 factory presets with over 45 expansion packs of additional sounds.



FIGURE 1

75.     The Software contains a variety of wholly original material that is copyrightable subject matter under the laws of the United States. To date, reFX Audio has secured copyright registrations on two products at issue in this suit.

76.     reFX Audio, as the owner, holds the copyright registration in the computer program directed to Nexus 2, Copyright Registration Number TX 7-551-179 ("the '179 Copyright"). See Exhibit B, Nexus 2 Certificate of Registration.

77.     reFX Audio, as the owner, holds the copyright registration in the computer program directed to Nexus 2.2.1, Copyright Registration Number TX 7-551-176 ("the '176 Copyright"). See Exhibit C, Nexus 2.2.1 Certificate of Registration.

78.     reFX Audio, as the owner, holds the copyright registration in the computer program directed to Nexus Expansion Bass, Copyright Registration Number TX 7-551-724 ("the '724 Copyright"). See Exhibit D, Nexus Expansion Bass Certificate of Registration.

79.     reFX Audio, as the owner, holds the copyright registration in the computer program directed to Nexus Expansion Minimal House 2, Copyright Registration Number TX 7-551-181 ("the '181 Copyright"). See Exhibit E, Nexus Expansion Minimal House 2 Certificate of Registration.

80.     Under the Copyright Act, reFX Audio is the proprietor of all right, title, and interest in the '179, '176, '724, and '181 Copyrights (collectively, "the Copyrights-in-suit"), including the right to sue for past infringement.

81.     reFX Audio has in the past and currently is producing, marketing and selling the Software.  Such Software comes in an array of options and pricing, currently: $299 (for Nexus 2 plus 1000 factory presets) and $3,049 (for Nexus 2 plus 1000 factory presets, and all 69 expansion packs).

82.     Under the Copyright Act, Plaintiff also possesses the exclusive rights to reproduce the copyrighted works and to distribute the copyrighted works to the public.

COPYRIGHT INFRINGEMENT AND BITTORRENT

83.     BitTorrent is a peer-to-peer file sharing protocol used for copying and distributing data on the Internet, including files containing digital versions of motion pictures, television shows, and computer software.  Rather than downloading a file from a single source, the BitTorrent protocol allows users to join a swarm, or group of users to download and upload from each other simultaneously.  The process works as follows:

84.     Users intentionally download a small program that they install on their computers – the BitTorrent "client" application.  The BitTorrent client is the user's interface during the

downloading/uploading process. There are many different BitTorrent clients, all of which are readily available on the Internet for free.

85.    BitTorrent client applications typically lack the ability to search for torrent files. To find torrent files available for download (as made available by other BitTorrent users), users intentionally visit torrent sites using any standard web browser.

86.    A torrent site is a website that contains an index of torrent files being made available by other users (generally an extensive listing of movies, television programs, and software among other copyrighted content). The torrent site hosts and distributes small torrent files known as "torrent files." Although torrent files do not contain actual audio/visual media, they instruct a user's computer where to go and how to get the desired file. Torrent files interact with specific trackers, allowing the user to download the desired file.

87.    The torrent file contains a unique hash identifier which is a unique identifier generated by a mathematical algorithm developed by the National Security Agency. This torrent file is tagged with the file's unique "info-hash," which acts as a "roadmap" to the IP addresses of other users who are sharing the media file identified by the unique info-hash, as well as specifics about the media file.

88.    A BitTorrent tracker manages the distribution of files, connecting uploaders (those who are distributing content) with downloaders (those who are copying the content). A tracker directs a BitTorrent user's computer to other users who have a particular file, and then facilitates the download process from those users. When a BitTorrent user seeks to download a file, such as Plaintiff's Software, he or she merely clicks on the appropriate torrent file on a torrent site, and the torrent file instructs the client application how to connect to a tracker that

16

will identify where the file is available and begin downloading it. In addition to a tracker, a user can manage file distribution through a Peer Exchange and/or a Distributed Hash Table.

89.     Files downloaded in this method are downloaded in hundreds or thousands of individual pieces. Each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same file. The effect of this technology makes every downloader also an uploader of the content. This means that every user who has a copy of the infringing material on a torrent network must necessarily also be a source of download for that material.

90.     Thus, each IP address identified by the tracker is an uploading user who is currently running a BitTorrent client on his or her computer and who is currently offering the desired software file for download. The downloading user's BitTorrent software then begins downloading the Software file without any further effort from the user, by communicating with the BitTorrent client programs running on the uploading users' computers.

91.     The life cycle of a file shared using BitTorrent begins with just one individual – the initial propagator, sometimes called a "seeder." The initial propagator intentionally elects to share a torrent file with a torrent swarm. The original file, in this action is Hash 1DCA, which provides access to Plaintiff's copyrighted Software.

92.     Other members of the swarm connect to the respective seeds to download the files, wherein the download creates an exact digital copy of Plaintiff's copyrighted Software on the downloaders' computers. For the swarm, as additional infringers request the same file, each additional infringer joins the collective swarm, and each new infringer receives pieces of the file from each other infringer in the swarm who has already downloaded any part of the file.

17

93.     Eventually, once the initial propagator has distributed each piece of the file to at least one other infringer, so that together the pieces downloaded by members of the swarm comprise the whole Software package when reassembled, the initial propagator may leave the swarm, and the remaining infringers can still obtain a full copy of the Software by exchanging the pieces of the Software that each one has.

94.     Files downloaded in this method are received in hundreds or even thousands of individual pieces. Each piece may be contributed from a different member of the swarm. Moreover, each piece that is downloaded is immediately thereafter made available for distribution to other users seeking the same complete file. Thus, the effect of this technology effectively makes every downloader of the content also an uploader. This means that every user who has a copy of the infringing material in a swarm may also be a source for later downloaders of that material.

95.     This distributed nature of BitTorrent leads to a rapid viral sharing of a file throughout the collective peer users. As more peers join the collective swarm and begin to download pieces of the file, the frequency of successful downloads also increase due to the heightened availability of each piece of the desired file.

96.     Because of the nature of the BitTorrent protocol, any user that has downloaded a file prior to the time that a subsequent peer downloads the same file is automatically a source for the subsequent peer, so long as that first peer is online at the time the subsequent peer requests the file from the swarm.

18

97.     Because of the nature of the collective swarm, every infringer is – and by necessity all infringers together are – simultaneously both stealing the Plaintiff's copyrighted material and redistributing it.

98.     Infringers are encouraged to further distribute copyrighted material by the design of many BitTorrent trackers. Trackers will limit the speed at which files may be downloaded by a particular peer if that peer limits the speed at which files may be uploaded from his or her computer, or has a poor upload-to-download ratio.

99.     Plaintiff has recorded Defendants' IP addresses publishing the Software via BitTorrent, as Plaintiff's investigator has downloaded the Software from Defendants' IP addresses on multiple occasions as evidenced by Group Exhibit F.

100.    At various times, Plaintiff discovered and documented its copyrighted Software being publicly distributed by Defendants by and through the BitTorrent network. Group Exhibit F.

101.    Upon information and belief, Defendant Dorothy Green utilized μTorrent 3.2.0 on or about October 10, 2012 to download Plaintiff's software.

102.    Upon information and belief, Defendant Green did this by loading Hash 1DCA into her BitTorrent client.

103.    Defendant Green's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

104.    Upon information and belief, Defendant Laura Shirley utilized μTorrent 3.2.0 on or about October 10, 2012 to download Plaintiff's software.

19

105.    Upon information and belief, Defendant Shirley did this by loading Hash 1DCA into her BitTorrent client.

106.    Defendant Shirley's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

107.    Upon information and belief, Defendant Maria Reyes utilized Ares 2.1.8.2 on or about October 17, 2012 to download Plaintiff's software.

108.    Upon information and belief, Defendant Reyes did this by loading Hash 1DCA into her BitTorrent client.

109.    Defendant Reyes's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

110.    Upon information and belief, Defendant Christopher Scalet utilized μTorrent 3.2.1 on or about October 19, 2012 to download Plaintiff's software.

111.    Upon information and belief, Defendant Scalet did this by loading Hash 1DCA into his BitTorrent client.

112.    Defendant Scalet's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

113.    Upon information and belief, Defendant Peter Petrou utilized μTorrent 3.2.1 on or about October 10, 2012 to download Plaintiff's software.

114.    Upon information and belief, Defendant Petrou did this by loading Hash 1DCA into his BitTorrent client.

115.    Defendant Petrou's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

20

116. Upon information and belief, Defendant Christian Cruz utilized µTorrent 3.2.0 on or about October 26, 2012 to download Plaintiff's software.

117. Upon information and belief, Defendant Cruz did this by loading Hash 1DCA into his BitTorrent client.

118. Defendant Cruz's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

119. Upon information and belief, Defendant Raquel Quiroz utilized µTorrent 3.0.1 on or about October 27, 2012 to download Plaintiff's software.

120. Upon information and belief, Defendant Quiroz did this by loading Hash 1DCA into her BitTorrent client.

121. Defendant Quiroz's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

122. Upon information and belief, Defendant Victoria Banis utilized µTorrent 3.2.1 on or about October 28, 2012 to download Plaintiff's software.

123. Upon information and belief, Defendant Banis did this by loading Hash 1DCA into her BitTorrent client.

124. Defendant Banis's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

125. Upon information and belief, Defendant Thomas Pavlopoulos utilized BitTorrent 7.6.1 on or about November 4, 2012 to download Plaintiff's software.

126. Upon information and belief, Defendant Pavlopoulos did this by loading Hash 1DCA into his BitTorrent client.

127.    Defendant Pavlopoulos's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

128.    Upon information and belief, Defendant Lamont Coleman utilized BitTorrent 7.7.0 on or about November 16, 2012 to download Plaintiff's software.

129.    Upon information and belief, Defendant Coleman did this by loading Hash 1DCA into his BitTorrent client.

130.    Defendant Coleman's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

131.    Upon information and belief, Defendant Anthony Gross utilized Miro 5.0.0.0 on or about November 24, 2012 to download Plaintiff's software.

132.    Upon information and belief, Defendant Gross did this by loading Hash 1DCA into his BitTorrent client.

133.    Defendant Gross's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

134.    Upon information and belief, Defendant Paula Youngblood utilized μTorrent 3.2.1 on or about November 25, 2012 to download Plaintiff's software.

135.    Upon information and belief, Defendant Youngblood did this by loading Hash 1DCA into her BitTorrent client.

136.    Defendant Youngblood's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

137.    Upon information and belief, Defendant Anastas Dhori utilized μTorrent Mac 1.6.5 on or about November 26, 2012 to download Plaintiff's software.

22

138. Upon information and belief, Defendant Dhori did this by loading Hash 1DCA into his BitTorrent client.

139. Defendant Dhori's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

140. Upon information and belief, Defendant Terry Butts utilized µTorrent Mac 1.6.5 on or about November 5, 2012 to download Plaintiff's software.

141. Upon information and belief, Defendant Butts did this by loading Hash 1DCA into his/her BitTorrent client.

142. Defendant Butts's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

143. Upon information and belief, Defendant Kestas Palulonis utilized µTorrent 2.0.4 on or about December 3 10, 2012 to download Plaintiff's software.

144. Upon information and belief, Defendant Palulonis did this by loading Hash 1DCA into hi/her BitTorrent client.

145. Defendant Palulonis's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

146. Upon information and belief, Doe Defendant 67 utilized µTorrent 3.2.2 on or about December 3, 2012 to download Plaintiff's software.

147. Upon information and belief, Defendant 67 did this by loading Hash 1DCA into his/her BitTorrent client.

148. Defendant 67's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

23

149.    Upon information and belief, Defendant Ryszard Zbroinski utilized μTorrent 3.2.2 on or about December 7, 2012 to download Plaintiff's software.

150.    Upon information and belief, Defendant Zbroinski did this by loading Hash 1DCA into his BitTorrent client.

151.    Defendant Zbroinski's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

152.    Upon information and belief, Doe Defendant 75 utilized BitComet 1.33 on or about December 11, 2012 to download Plaintiff's software.

153.    Upon information and belief, Defendant 75 did this by loading Hash 1DCA into his/her BitTorrent client.

154.    Defendant 75's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

155.    Upon information and belief, Defendant Jermale Younger utilized μTorrent 3.1.3 on or about December 15, 2012 to download Plaintiff's software.

156.    Upon information and belief, Defendant Younger did this by loading Hash 1DCA into her BitTorrent client.

157.    Defendant Younger's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

158.    Upon information and belief, Defendant Mike Siegel utilized μTorrent 3.2.1 on or about December 16, 2012 to download Plaintiff's software.

159.    Upon information and belief, Defendant Siegel did this by loading Hash 1DCA into his BitTorrent client.

24

160. Defendant Siegel's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

161. Upon information and belief, Defendant Mary Lynne Shafer utilized µTorrent 3.2.2 on or about December 16, 2012 to download Plaintiff's software.

162. Upon information and belief, Defendant Shafer did this by loading Hash 1DCA into her BitTorrent client.

163. Defendant Shafer's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

164. Upon information and belief, Defendant Omar Martinez utilized BitTorrent 7.7.2 on or about December 23, 2012 to download Plaintiff's software.

165. Upon information and belief, Defendant Martinez did this by loading Hash 1DCA into his BitTorrent client.

166. Defendant Martinez's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

167. Upon information and belief, Defendant Brian McClain utilized BitTorrent 7.7.0 on or about December 24, 2012 to download Plaintiff's software.

168. Upon information and belief, Defendant McClain did this by loading Hash 1DCA into his BitTorrent client.

169. Defendant McClain's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

170. Upon information and belief, Defendant Alex Negatkin utilized BitTorrent 6.4.0 on or about November 11, 2012 to download Plaintiff's software.

171.    Upon information and belief, Defendant Negatkin did this by loading Hash 1DCA into his BitTorrent client.

172.    Defendant Negatkin's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

173.    Upon information and belief, Defendant Robert Walker utilized BitTorrent 7.7.2 on or about December 29, 2012 to download Plaintiff's software.

174.    Upon information and belief, Defendant Walker did this by loading Hash 1DCA into his BitTorrent client.

175.    Defendant Walker's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

176.    Upon information and belief, Defendant Dainius Kugauda utilized μTorrent 3.2.3 on or about December 29, 2012 to download Plaintiff's software.

177.    Upon information and belief, Defendant Kugauda did this by loading Hash 1DCA into his BitTorrent client.

178.    Defendant Kugauda's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

179.    Upon information and belief, Defendant Andrew Guice utilized μTorrent 3.2.3 on or about December 27, 2012 to download Plaintiff's software.

180.    Upon information and belief, Defendant Guice did this by loading Hash 1DCA into his BitTorrent client.

181.    Defendant Guice's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

182. Upon information and belief, Defendant Edward Love utilized Vuze 4.8.0.0 on or about December 30 10, 2012 to download Plaintiff's software.

183. Upon information and belief, Defendant Love did this by loading Hash 1DCA into his BitTorrent client.

184. Defendant Love's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

185. Upon information and belief, Defendant Scott Lee Roesslein utilized µTorrent 3.2.3 on or about December 31, 2012 to download Plaintiff's software.

186. Upon information and belief, Defendant Roesslein did this by loading Hash 1DCA into his BitTorrent client.

187. Defendant Roesslein's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

188. Upon information and belief, Defendant Laura Sanchez utilized µTorrent 3.2.3 on or about January 11, 2013 to download Plaintiff's software.

189. Upon information and belief, Defendant Sanchez did this by loading Hash 1DCA into her BitTorrent client.

190. Defendant Sanchez's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

191. Upon information and belief, Defendant Wendy Enger utilized µTorrent 3.2.0 on or about January 13, 2013 to download Plaintiff's software.

192. Upon information and belief, Defendant Enger did this by loading Hash 1DCA into her BitTorrent client.

27

193.    Defendant Enger's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

194.    Upon information and belief, Defendant Miladin Bulatovic utilized µTorrent 3.2.2 on or about January 15, 2013 to download Plaintiff's software.

195.    Upon information and belief, Defendant Bulatovic did this by loading Hash 1DCA into her BitTorrent client.

196.    Defendant Bulatovic's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

197.    Upon information and belief, Defendant Zofia Lukaszczyk utilized µTorrent 2.2.0 on or about November 16, 2012 to download Plaintiff's software.

198.    Upon information and belief, Defendant Lukaszczyk did this by loading Hash 1DCA into her BitTorrent client.

199.    Defendant Lukaszczyk's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

200.    Upon information and belief, Defendant Robin Thompson utilized BitTorrent 7.7.2 on or about December 12, 2012 to download Plaintiff's software.

201.    Upon information and belief, Defendant Thompson did this by loading Hash 1DCA into her BitTorrent client.

202.    Defendant Thompson's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

203.    Upon information and belief, Defendant Karen Coan utilized µTorrent 3.2.3 on or about January 20, 2013 to download Plaintiff's software.

28

204. Upon information and belief, Defendant Coan did this by loading Hash 1DCA into her BitTorrent client.

205. Defendant Coan's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

206. Upon information and belief, Defendant Scott Maki utilized μTorrent 3.2.0 on or about February 10, 2013 to download Plaintiff's software.

207. Upon information and belief, Defendant Maki did this by loading Hash 1DCA into his BitTorrent client.

208. Defendant Maki's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

209. Upon information and belief, Defendant Yvonne Washington utilized μTorrent 3.2.3 on or about January 27, 2013 to download Plaintiff's software.

210. Upon information and belief, Defendant Washington did this by loading Hash 1DCA into her BitTorrent client.

211. Defendant Washington's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

212. Upon information and belief, Defendant Andrew Cwick utilized μTorrent 3.2.3 on or about January 31, 2013 to download Plaintiff's software.

213. Upon information and belief, Defendant Cwick did this by loading Hash 1DCA into his BitTorrent client.

214. Defendant Cwick's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

215. Upon information and belief, Defendant Jose Enrique Garcia utilized µTorrent 3.2.3 on or about November 24, 2012 to download Plaintiff's software.

216. Upon information and belief, Defendant Garcia did this by loading Hash 1DCA into his BitTorrent client.

217. Defendant Garcia's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

218. Upon information and belief, Defendant Steve Dimakos utilized µTorrent 3.3.0 on or about February 3, 2013 to download Plaintiff's software.

219. Upon information and belief, Defendant Dimakos did this by loading Hash 1DCA into his BitTorrent client.

220. Defendant Dimakos's BitTorrent client then further distributed Plaintiff's Software to other BitTorrent users seeking Plaintiff's Software.

221. Defendants, without authorization, copied and distributed the Software owned by and registered to Plaintiff in violation of 17 U.S.C. §§ 106(1) and (3).

222. Defendants have participated in one P2P network swarm that was utilized to unlawfully infringe upon Plaintiff's exclusive rights in its copyrighted Software without permission.

223. Each Defendant initiated his or her infringement by searching for and obtaining a torrent file containing information sufficient to locate and download Plaintiff's copyrighted Software. Thereafter, each Defendant opened the torrent file using a BitTorrent client application that was specifically developed to read such file.

224. Defendants are members of a single swarm. Exhibit A.

30

225.    Defendants own or otherwise have control of a computer or computers collectively connected to the Internet via an IP address that contained – or possibly still contains – a torrent file identifying Plaintiff's copyrighted Software.  Each computer also contained or still contains Plaintiff's copyrighted Software, which was downloaded using the information encoded in the torrent file.

226.    Each Defendant republished and duplicated the Plaintiff's Software in an effort to deprive the Plaintiff of its exclusive rights in the Software under the Copyright Act.

### COUNT I
### DIRECT COPYRIGHT INFRINGEMENT OF THE '179 COPYRIGHT

227.    Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 226 as if fully set forth herein.

228.    Plaintiff is, and at all relevant times, has been, the copyright owner of the '179 copyright in Nexus 2, infringed upon by Defendants.

229.    The copyrighted work was infringed upon by Defendants.

230.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software, including Nexus 2, and to distribute the Software to the public.

231.    The Plaintiff alleges that Defendants, without the permission or consent of the Plaintiff, have used, and continue to use, BitTorrent software to download the Software, including a version of Nexus 2 (version 2.2.0), to distribute the Software to the public, including hundreds of other BitTorrent users, and/or to make the Software available for distribution to

31

others. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution.

232. Nexus 2.2.0 is substantially similar to Nexus 2; Nexus 2.2.0 is simply a later version with some minor upgrades.

233. Defendants' actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright.

234. Exhibit A and Group Exhibit F identify the Defendants who have, without the permission or consent of Plaintiff, distributed the copyrighted Software *en masse,* through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

235. Defendants' acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

236. As a result of Defendants' infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

237. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright and ordering that Defendants destroy all copies of the copyrighted Software made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT II
## DIRECT COPYRIGHT INFRINGEMENT OF THE '176 COPYRIGHT

238.    Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 237 as if fully set forth herein.

239.    Plaintiff is, and at all relevant times, has been, the copyright owner of the '176 Copyright in Nexus 2.2.1, infringed upon by Defendants.

240.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software, including Nexus 2.2.1, and to distribute the Software, including Nexus 2.2.1, to the public.

241.    The Plaintiff alleges that Defendants, without the permission or consent of the Plaintiff, have used, and continue to use, BitTorrent software to download the Software, including a version of Nexus 2.2.1, to distribute the Software to the public, including hundreds of other BitTorrent users, and/or to make the Software available for distribution to others.   In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright.

242.    Exhibit A and Group Exhibit F identify the Defendants who have, without the permission or consent of Plaintiff, distributed the copyrighted Software *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

243.    Nexus 2.2.0 is substantially similar to Nexus 2.2.1; Nexus 2.2.1 is a later version with minor upgrades, although the vast majority of both software packages are identical.

33

244. Defendants' actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright.

245. Defendants' acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

246. As a result of Defendants' infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

247. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright and ordering that Defendants destroy all copies of the copyrighted Software made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT III
## DIRECT COPYRIGHT INFRINGEMENT OF THE '724 COPYRIGHT

248. Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 247 as if fully set forth herein.

249. Plaintiff is, and at all relevant times, has been, the copyright owner of the '724 Copyright in Nexus Expansion Bass, infringed upon by Defendants.

250. Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software, including Nexus Expansion Bass, and to distribute the Software, including Nexus Expansion Bass, to the public.

34

251.   The Plaintiff alleges that Defendants, without the permission or consent of the

Plaintiff, have used, and continue to use, BitTorrent software to download the Software,

including a version of Nexus Expansion Bass, to distribute the Software to the public, including

hundreds of other BitTorrent users, and/or to make the Software available for distribution to

others.   In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and

distribution.   Defendants' actions constitute infringement of Plaintiff's copyright and exclusive

rights under copyright.

252.   Exhibit A and Group Exhibit F identify the Defendants who have, without the

permission or consent of Plaintiff, distributed the copyrighted Software *en masse*, through a

public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or

Distributed Hash Tables.

253.   Defendants' actions constitute infringement of Plaintiff's copyright and exclusive

rights under copyright.

254.   Defendants' acts of infringement have been willful, intentional, and in disregard

of and with indifference to the rights of Plaintiff.

255.   As a result of Defendants' infringement of Plaintiff's exclusive rights under

copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504

and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

256.   The conduct of Defendants is causing and, unless enjoined and restrained by this

Court, will continue to cause Plaintiff great and irreparable injury.   Pursuant to 17 U.S.C. §§ 502

and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing

Plaintiff's copyright and ordering that Defendants destroy all copies of the copyrighted Software made in violation of Plaintiff's exclusive rights to the copyright.

## COUNT IV
## DIRECT COPYRIGHT INFRINGEMENT OF THE '181 COPYRIGHT

257.    Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 256 as if fully set forth herein.

258.    Plaintiff is, and at all relevant times, has been, the copyright owner of the '181 Copyright in Nexus Expansion Minimal House 2, infringed upon by Defendants.

259.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software, including Nexus Expansion Minimal House 2, and to distribute the Software, including Nexus Expansion Minimal House 2, to the public.

260.    The Plaintiff alleges that Defendants, without the permission or consent of the Plaintiff, have used, and continue to use, BitTorrent software to download the Software, including a version of Nexus Expansion Minimal House 2, to distribute the Software to the public, including hundreds of other BitTorrent users, and/or to make the Software available for distribution to others.   In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution.  Defendants' actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright.

261.    Exhibit A and Group Exhibit F identify the Defendants who have, without the permission or consent of Plaintiff, distributed the copyrighted Software *en masse*, through a public website and any one of various public BitTorrent trackers, Peer Exchanges, and/or Distributed Hash Tables.

262.    Defendants' actions constitute infringement of Plaintiff's copyright and exclusive rights under copyright.

263.    Defendants' acts of infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

264.    As a result of Defendants' infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

265.    The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury.  Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyright and ordering that Defendants destroy all copies of the copyrighted Software made in violation of Plaintiff's exclusive rights to the copyright.

### COUNT V
### CONTRIBUTORY COPYRIGHT INFRINGEMENT

266.    Plaintiff repeats and realleges each of the allegations contained in Paragraphs 1 through 265 as if fully set forth herein.

267.    Plaintiff is, and at all relevant times, has been, the copyright owner of the Software infringed upon by Defendants.

268.    Among the exclusive rights granted to Plaintiff under the Copyright Act are the exclusive rights to reproduce the Software and to distribute the Software to the public.

269.    The Plaintiff alleges that Defendants, without the permission or consent of the Plaintiff, have participated in a BitTorrent swarm directed at making the Software available for

distribution to himself or herself as well as others, have used, and continues to use, BitTorrent software to download the Software, to distribute the Software to the public, including hundreds of other BitTorrent users, and/or to make the Software available for distribution to others. In doing so, Defendants have violated Plaintiff's exclusive rights of reproduction and distribution.

270. By participating in the BitTorrent swarm with other peers, Defendants induced, caused or materially contributed to the infringement of Plaintiff's copyright and exclusive rights under copyright by other peers and other swarm members.

271. Exhibit A and Group Exhibit F identify the Defendants who have, without the permission or consent of Plaintiff, contributed to the infringement of Plaintiff's copyright by other Defendants, peers, and swarm members.

272. Defendants' acts of contributory infringement have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

273. As a result of Defendants' contributory infringement of Plaintiff's exclusive rights under copyright, Plaintiff is entitled to either actual or statutory damages pursuant to 17 U.S.C. § 504 and to its attorney's fees and costs pursuant to 17 U.S.C. § 505.

274. The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury. Pursuant to 17 U.S.C. §§ 502 and 503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further contributing to the infringement of Plaintiff's copyright and ordering that Defendants destroy all copies of the copyrighted Software made in violation of Plaintiff's exclusive rights to the copyright.

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A. For entry of preliminary and permanent injunctions providing that Defendants shall be enjoined from directly or indirectly infringing Plaintiff's rights in the copyrighted Software ("Plaintiff's Software"), including without limitation by using the Internet to reproduce or copy Plaintiff's Software, to distribute Plaintiff's Software, or to make Plaintiff's Software available for distribution to the public, except pursuant to a lawful license or with the express authority of Plaintiff. Defendants also shall destroy all copies of Plaintiff's Software that Defendants have downloaded onto any computer hard drive or server without Plaintiff's authorization and shall destroy all copies of the downloaded Software transferred onto any physical medium or device in Defendants' possession, custody, or control.

B. For actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of the Plaintiff.

C. For Plaintiff's costs.

D. For Plaintiff's reasonable attorney's fees.

E. For such other and further relief as the Court deems proper.

Dated: October 16, 2013    Respectfully submitted,
           reFX Audio Software, Inc.


           By: *Paul A. Lesko*
            Paul A. Lesko
            Simmons Browder Gianaris Angelides &
            Barnerd, LLC
            One Court Street
            Alton, IL 62002
            39

Phone: 618.259.2222
Fax: 618.259.2251
plesko@simmonsfirm.com

and

Patrick J. Keating
230 W. Monroe Street
Suite 2221
Chicago, IL 60606
Phone: (312) 759-7518
Fax: (312) 759-7516
pjk@keatinglawgroup.com

***Counsel for Plaintiff reFX Audio Software, Inc.***

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 16th day of October, 2013, a true and accurate copy of the

foregoing was filed via the Court's electronic case filing system ("ECF") upon all counsel of

record:

johndoe_75_178@yahoo.com
*PRO SE*

*/s/ Paul A. Lesko*
Paul A. Lesko – Simmons Browder Gianaris
   Angelides & Barnerd, LLC